# Richmond

## W. J. ADKINS, ET AL., TRADING ETC. v. G. L. HASH, ET AL., TRADING ETC.

November 21, 1949.

Record No. 3521.

Present, Hudgins, C. J., and Eggleston, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*Samuel A. Martin* and *W. B. Snidow,* for the plaintiffs in error.

*Oppie L. Hedrick* and *J. Livingstone Dillow,* for the defendants in error.

HUDGINS, C. J., delivered the opinion of the court.

The only question presented by this record is, whether two non-residents, who for several years, had conducted a business as a partnership in Pearisburg, Virginia, can escape liability for a debt contracted by the manager of the business by merely proving that at the time the debt was contracted, the partners had obtained a corporate charter in West Virginia to conduct the same business in Virginia.

There is no substantial conflict in the evidence. G. L. and Rose Mary Hash were residents of Beckley, West Virginia. For seven or eight years prior to April, 1946, they, as partners, had conducted a furniture business in Pearisburg, Virginia, under the firm name of "Hash Furniture Company." During this period D. B. Webster was manager and in complete charge of this business. There was a large sign across the front of the store reading "Hash Furniture Company." On both sides of a truck used by Webster in the business was painted, in large letters, the name "Hash Furniture Company."

Plaintiffs, W. J. Adkins, R. L. Clark and I. H. Vassar, Jr., partners, trading as Eastern Electric Company, of Lynchburg, wholesale dealers in electrical supplies, through their salesman, received from D. B. Webster as manager of defendants' business, twenty-three orders for merchandise on various dates from August, 1946, to March, 1947. On receipt of the first of these orders, plaintiffs, upon investigation, ascertained that the Hash Furniture Company was an established concern of long standing, and a good credit risk. This investigation led them to believe that the Hash Furniture Company was a partnership, with the partners residing in Beckley, West Virginia. Relying upon this information, the merchandise, as directed, was shipped from time to time to the Hash Furniture Company, Pearisburg, Virginia. The purchase price of seventeen shipments was promptly paid, some by personal checks of D. B. Webster. While the manager acknowledged receipt of the last six items on the account, the purchase price amounting to $510.92 was not paid.

Webster testified that he, as manager, in the regular course of business, bought the merchandise from the plaintiffs in the name of the Hash Furniture Company "and every item of it went into defendant's store," at Pearisburg. He used his personal checks to pay plaintiffs for the merchandise shipped, but he made no reports of these transactions to the

home office of defendant company. These facts were not known to plaintiffs.

Webster also testified that when he commenced to work for the Hash Furniture Company, it was a partnership, composed of G. L. and Rose Mary Hash. In August, 1946, another employee of defendants told him that the business was incorporated. He was not notified by the corporation that it had taken over the partnership business. There was no change made in his employment or the duties he was required to perform. There was no change in the location of the business, the name, or the method of conducting same.

G. L. Hash, one of defendants, testified that he and his wife resided at Beckley, West Virginia, and that for a number of years they, as partners, had engaged in the furniture business in West Virginia and Virginia. Webster was the manager of their store in Pearisburg, Virginia, and the business was conducted as a partnership, under the name of "Hash Furniture Company." The retail merchant's license for the conduct of the business was issued on January 1, 1946, to G. L. and Rose Mary Hash, of Beckley, West Virginia, trading as "Hash Furniture Company." Webster had no authority to buy merchandise in Pearisburg, as all purchases were supposed to be made by defendants at their office in West Virginia.

This witness also testified that "on April 30, 1946, the business was incorporated under the laws of West Virginia, and thereafter operated as a corporation." He filed with his testimony a certified copy of the Certificate of Incorporation, bearing date April 30, 1946, issued by the State of West Virginia. It is stated in the certificate that the name of the corporation would be "Hash Furniture Company of Pearisburg, Inc.;" that its principal office or place of business would be in Beckley, West Virginia, and "Its chief works would be located in Pearisburg, Giles County, Virginia." The amount of capital stock with which the corporation "will commence business is $1,000." G. L. and Rose Mary Hash and one other were the incorporators.

This witness stated that the corporation was a solvent, going concern, and at the time of the trial was operating stores in Virginia and West Virginia, with assets of "three quarters of a million dollars."

Defendants offered no evidence tending to prove that the foreign corporation had been domesticated in this State, or had obtained any authority from the State Corporation Commission of Virginia to do business in Virginia, or that it had paid the charges assessed against non-resident corporations, or that it had designated the Secretary of the Commonwealth, or any one, as its statutory agent, upon whom process might be served.

There is no evidence to show that the partnership transferred any of its stock of goods, accounts, or other property from the partnership to the corporation. The evidence clearly shows that after the date of incorporation the business was conducted in the same name, at the same location, and under the same license. The manager of the partnership continued to manage the business as he had previously done. He was not officially notified that there had been any change in his employers, or that there had been any change in the ownership and method of conducting the business. There was no change in the name of the firm over the front door or on the sides of the truck used in the business.

No notice of any kind was given of the dissolution of the partnership or that the partnership had sold and transferred its business to a third party. Defendants contend no notice was necessary because, on August 14, 1946, the date on which the manager first purchased merchandise from plaintiffs, the partnership had ceased to exist and the business was then being conducted by a corporation, and that neither Webster nor defendants made any "representation to plaintiffs as to whether the Hash Furniture Company was a partnership or a corporation."

The cases hold that with respect to notice of the dissolution of, or a sale or transfer of partnership assets to a

third party, a distinction is made between those who have previously dealt with the firm and those who had no such dealings. *Dickinson* v. *Dickinson & Co.*, 25 Gratt. (66 Va.) 321, 329; *Wood* v. *Jefferies & Co.*, 117 Va. 193, 194, 83 S. E. 1074.

A partnership is not ended, in respect to strangers, merely by an agreement between the several partners to dissolve it. From existing debts and liabilities of the first to third persons, the retiring partner is, of course, in no case exonerated by the dissolution; and even as to such as are contracted afterwards, he is responsible in cases of voluntary dissolution, unless he gives notice of the fact to the public by general advertisement in the newspapers or otherwise, and to the previous customers of the firm by special communication, as by circular or other similar mode.   2 Min. Inst., Pt. II .(2nd ed.) p. 888.   See Code (Michie's 1942) sec. 4359(16)-(1).

The burden of proving the existence of the partnership alleged was upon the plaintiffs.   Plaintiffs' evidence is positive that the business was conducted as a partnership. Indeed, the defendants admit that for a number of years prior to April 30, 1946, the business was so conducted. Plaintiffs, having established the existence of the partnership, are entitled to the presumption that the partnership continued to exist until the contrary is proven.   *Ogden Packing, etc., Co.* v. *Wyatt*, 59 Utah 481, 204 P. 978, 22 A. L. R. 359; *Mulkey* v. *Anglin*, 166 Okla. 8, 25 P. (2d) 778, 89 A. L. R. 980, and note; 40 Am. Jur., Partnership, sec. 86, p. 189.

The only proof offered to support the contention that the corporation had taken over the business of the partnership was a certificate of incorporation issued under the laws of the State of West Virginia.   There is not a scintilla of evidence tending to prove that this foreign corporation had complied with any of the conditions required by law to do business in Virginia.   In the absence of evidence to show that there had been an actual transfer of the partnership business

to the corporation, we must give force and effect to the presumption that the partnership continued to exist and was conducting the business at the time plaintiff extended credit to it as such.

It was stated in the oral argument that, while D. B. Webster may have exceeded his authority in buying merchandise from plaintiffs, there was no valid defense to plaintiffs' claim if the action had been brought against the true owners of the business. The evidence, considered as a whole, fully justifies this statement.

Our conclusion is that the trial court committed error in striking the evidence and, in effect, directing a verdict for defendants. The verdict of the jury will be set aside, the judgment reversed, and final judgment here entered for plaintiffs.

*Reversed and final judgment.*