# Richmond

GRACE T. HUMMER, INDIVIDUALLY, ETC. v. GEORGE H. ENGEMAN.

April 26, 1965.

Record No. 5932.

Present, Eggleston, C. J., and Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.

*Richard E. Hill* (*George M. Martin; Weaver, diZerega and Majer*, on brief), for the plaintiff in error.

*William W. Nickels* and *J. Sloan Kuykendall* (*Stilson H. Hall; Kuykendall & Whiting*, on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

Grace T. Hummer, individually, and as administratrix of the Estate of Aubrey L. Hummer, hereinafter called defendants, appealed from an order entered January 3, 1964, whereby George H. Engeman, sometimes hereinafter called plaintiff, recovered a judgment against defendants in the sum of $9,440 for a real estate commission.

Initially, plaintiff filed a bill in chancery praying that the court decree that he was entitled to a real estate commission of $9,480 (5 per cent of $189,600) and that defendants be ordered to make payment or to direct the settlement attorneys to do so. Defendants demurred to the bill on the ground that plaintiff's allegations were "purely legal and not cognizable in a court of equity." The demurrer was sustained, and pursuant to the provisions of Code, § 8-138 the case was transferred to the law side of the docket, with leave to plaintiff to file amended pleadings. Thereafter, plaintiff amended his pleading by filing a motion for judgment. A demurrer thereto was partially sustained and motions for summary judgment made by both parties were overruled. Subsequently plaintiff filed an amended motion for judgment and defendants filed their grounds of defense.

A trial was had on June 6, 1963. After plaintiff had rested his case, defendants moved the court to strike plaintiff's evidence, but the motion was overruled. At the conclusion of all the evidence defendants renewed their motion to strike plaintiff's evidence. Whereupon, the trial court, out of the presence of the jury, stated that it appeared that there was no issue of fact for the jury to determine and that either plaintiff or defendants were entitled to a judgment as a matter of law. Plaintiff then moved the court to strike defendants' evidence and enter a summary judgment for him. Ruling on the motion was reserved.

Without objection the court discharged the jury stating: "Gentlemen of the jury, I am pleased to tell you at this time that counsel has agreed that there is now no issue of fact before the jury; that The Court will have to decide this case as a matter of law." The case was set down for further argument and by order of January 3, 1964, the court entered judgment in favor of plaintiff against defendants for $9,440, which amounted to 5 per cent of $188,800. The order stated that "thereafter" defendants moved to impanel a jury to assess damages and that the motion was overruled. It is from this order that defendants appealed.

The evidence discloses that plaintiff, a licensed real estate broker, had been informed that the Hummers "were thinking of selling" their 236 acre farm in Loudoun county. He visited them for the purpose of securing a listing of the property, and on August 21, 1959, he entered into a "Sales Agreement" with them. The agreement had been prepared by plaintiff, and it stated in part:

"In consideration of *procuring a purchaser and advertising therefor,* we do hereby appoint George H. Engeman * * * the sole and exclusive agent to sell or dispose of our property * * * for a minimum purchase price of $188,800.00; taxes, insurance, interest, etc., to be adjusted to settlement on the following terms: 25% of the purchase price in cash at settlement, *interest only* at 5% payable annually for *3 years,* the unpaid 75% balance of the purchase price to be curtailed in seven equal payments with interest as aforesaid *on the fourth, fifth, sixth, seventh, eighth, ninth and tenth anniversaries of settlement.*

"Subject to prior sale, this agency shall begin at midnight, August 20, 1959 and shall continue for 30 days thereafter and thereafter until terminated by us upon 10 days prior notice in writing.

"If, during the time of said agency, or within 30 days thereafter, the said property shall be sold to any person procured by either of us, we agree to pay the said George H. Engeman a commission of 5% of the total selling or exchange price and we agree to direct the settlement attorney to pay the said George H. Engeman his commission from the proceeds of cash paid at settlement." (Italics supplied.)

The plaintiff immediately undertook to sell the farm. He advertised the property by "word of mouth" and contacted his "best clients", acquaintances, and other brokers. He showed the property to Irving Newcomb and to Edwin J. Noyes.

Engeman, the plaintiff, secured from Noyes a signed contract for the purchase of the land together with his check for $5,000 as a deposit on the purchase price of $188,800. The contract was dated August 27, 1959, and it provided, among other things, that Noyes was to pay in cash at settlement "within 180 days" $47,200 (25 per cent of the purchase price); that in consideration of the cash payment *"40 acres to be selected by the Purchaser is to be released free and clear with additional acreage to be released at the rate of one acre for each $1,200 curtail payment",* and that the purchaser was "to give back a first deed of trust to be secured by the balance of the acreage in the sum of $141,600 with interest thereon at 5% per annum payable annually with further provision for curtail payments of $20,220 *on*

*or before* 4 years from date of settlement and $20,230 *on or before* five, six, seven, eight, nine and ten years from date of settlement." (Italics supplied.)

On August 28, the day after Noyes had signed the contract, Engeman delivered it and the check for $5,000 to the Hummers. Engeman testified that Hummer "read it all over, and he turned around and said, 'Mama, the place is sold.' And he said to me, 'This is all right.' And then he said, 'Well, you know, tomorrow is Saturday and would you mind if I kept this and let my lawyer read it over for technicalities?' " Engeman left the contract and the check with the Hummers and stated that he would contact them the first part of the next week "and see what Mr. White [Hummer's attorney] had said about the contract."

Several days thereafter Engeman telephoned Hummer who informed him that his attorney had objected "to the fact that the contract called for release of land in consideration of the down payment." Engeman told Hummer that he would "come up and talk with him" about the objection and that he was "sure we can work that part of it out". Hummer agreed to discuss the matter, but when Engeman went to see him in a day or so he was not at home and could not be located. The following day Engeman received a letter from Hummer, dated August 31, which stated:

"This is to advise you that the exclusive agency to sell my farm of 236 acres in Broad Run District is hereby revoked, cancelled and terminated.

"The contract which you submitted for Mr. Edwin Noyes is not acceptable for several reasons, some of which I have outlined to you previously. I am returning it herewith together with *mr.* Noyes check. I am sorry that you did not keep your appointment to meet me in Leesburg today.

"Will you please return the agency contract to me."

Thereafter, through other real estate brokers, the Hummers entered into a contract for the sale of their farm to Camp Luckett, Inc. for $189,600. The contract was dated August 26, 1959, but it was stipulated that it was executed by the Hummers on September 3 and by Camp Luckett, Inc. on September 7. After the contract was executed an addendum was added to it which provided in part: "The commission to be paid to the agents shall be $15,000.00, of which amount $12,000.00 shall be held in escrow until any and all claims of George H. Engeman for a real estate commission based on the sale of this farm have been disposed of." It also contained this

clause: "We agree that from the $12,000.00 * * * will be paid any judgment of said Engeman against sellers for commission on this farm and any attorney's and court costs in litigation of such claim."

On October 15, counsel for Hummer wrote plaintiff requesting a return of the exclusive listing agreement and advising that Hummer had "a very interested buyer for the property." Counsel further stated that Hummer "doesn't want to have any unexpected claims for real estate commissions" and requested Engeman to furnish the names of any prospects who he thought might have been interested in the property on account of his efforts. On October 24, counsel wrote another letter to plaintiff informing him that the Hummers had contracted to sell the farm to Camp Luckett, Inc. and requesting him to either return the listing agreement or to send Hummer a statement acknowledging that he had no claim for a commission on this sale. The printed record does not show that plaintiff replied to either letter. Later, and before this action was commenced, Aubrey L. Hummer died.

The defendants, in their assignments of error relied upon, contend that the trial court erred (1) in refusing to strike plaintiff's evidence and enter summary judgment for defendants; (2) in granting plaintiff's motion to strike defendants' evidence and entering summary judgment for him; (3) in failing to submit to the jury the issue of the quantum of plaintiff's damages, and (4) "in admitting evidence which was beyond the issues framed by the 'Amended Motion for Judgment' and 'Grounds of Defense.'"

Defendants contend that the exclusive listing agreement was without consideration; that it was therefore terminable at will before plaintiff had performed; that the Noyes contract did not comply with the listing, and that the listing agreement was revoked and cancelled prior to the time they entered into a contract for sale of the property to Camp Luckett, Inc. On the other hand, plaintiff argues here, in substance, that the listing was a valid and subsisting exclusive contract for the sale of the farm and was irrevocable until the time specified therein had expired; that he procured a contract to purchase the land from Noyes which was accepted by the Hummers before the agency was revoked, and that he was entitled to a 5 per cent commission on the Camp Luckett contract under the terms of the listing agreement which was in force and effect at the time the Camp Luckett contract was entered into or, in the alternative, a like commission on the Noyes contract.

In *Perrow v. Rixey*, 119 Va. 192, 193, 89 S.E. 101 this court stated:

"Walker, in his late work, 'The Law of Real Estate Agency,' at sec. 15, observes: 'ordinarily, unless a contract of employment is coupled with an interest or is given for a valuable consideration, the authority of the agent may be terminated at will by giving notice, subject only to the requirement that it be given in good faith, and before the broker finds a purchaser.'" See also *Atl. Coast Realty Co. v. Townsend*, 124 Va. 490, 506, 98 S.E. 684; *Barnard v. Gardner Inv. Corp.*, 129 Va. 346, 351, 106 S.E. 346; 3 M. J., Brokers, § 7, p. 513; 12 Am. Jur. 2d, Brokers, § 58, p. 816.

The plaintiff says that he has never contended that his agency was "coupled with an interest." Hence, the question presented is whether he supplied sufficient consideration to prevent the exclusive listing agreement from being terminable at will by the Hummers.

The agreement provided: "In consideration of procuring a purchaser and advertising therefor, we do appoint George H. Engeman * * * the sole and exclusive agent" etc. It did not contain words such as "In consideration of your efforts to find a purchaser" as found in *Morris v. Bragg*, 155 Va. 912, 919, 156 S.E. 381 or "For the consideration of advertising and making reasonable efforts to sell" as found in *Wilson v. Brown*, 136 Va. 634, 636, 118 S.E. 88, cited by plaintiff. Nowhere in the agreement did plaintiff promise to find a purchaser or to do anything. He could perform or not perform. In short the listing agreement was merely an offer of a unilateral contract and the principal was not bound until plaintiff accepted the offer by performance of the act. We agree with defendants that the listing agreement lacked consideration or mutuality and that is was terminable at will before plaintiff had performed. See 2 Mechem on Agency 2d, § 2452, p. 2049 *et seq.* for a further discussion of the subject.

The question arises as to whether plaintiff did perform before receiving notice of the revocation of his agency. It is true that the Noyes contract to purchase the property was submitted by plaintiff to the Hummers before revocation of the listing agreement, but clearly it did not conform to the material terms of the listing in at least two particulars. First and most important, the Noyes contract provided for a release of 40 acres to be selected by the purchaser in consideration of the cash down payment and additional acreage to be released at $1,200 per acre, whereas the listing did not provide for any release of land; and second, the Noyes contract provided that the

first installment would be payable "on or before" four years from date of settlement and later installments carried the same provision "on or before", whereas the listing specifically provided that "interest only" was to be paid annually "for 3 years" and that stated curtail payments were to be made annually beginning with the fourth year after settlement and running through the tenth year after settlement. Thus, we see the listing did not provide for anticipated payments as permitted by the Noyes contract. While the record does not show the reason for the requirement that "interest only" be paid for three years and that the stated installments be paid over a period which extended from the fourth to the tenth year it could readily have been included in the listing for income tax advantages.

But plaintiff says that the Noyes contract was accepted by the Hummers when it was presented to them. The evidence does show that Hummer stated: "Mama, the place is sold" and "This is all right". However, he also said that he wanted his attorney to examine the instrument for "technicalities", and plaintiff agreed. We construe this to be an acceptance on condition that the contract would meet with his attorney's approval. The attorney did not approve the contract primarily for the reason that it carried the provision for the release of land upon consideration of the down payment. Hence, there was no acceptance.

There was no showing that the notice of revocation was given in bad faith. The only evidence that could be considered as relating thereto was the fact that the Camp Luckett contract was dated August 26, 1959, whereas the Noyes contract was dated August 27, but it was stipulated that the Hummers executed it on September 3 and Camp Luckett, Inc. on September 7. Anything that occurred after the notice of revocation was given is not controlling. The requirement is that the notice be given in good faith. Moreover, the record shows that the Hummers agreed to pay more commissions on the Camp Luckett sale than they would have paid on the Noyes contract which would have resulted in a net loss to them.

Since we find that the listing agreement lacked consideration or mutuality; that the Noyes contract was not in accordance with the terms of the listing agreement; that the contract was not accepted by the Hummers, and that there was no showing of bad faith, we hold that the Hummmers were not liable on the Noyes contract and had the power and the right to revoke and cancel the agreement without liability. Upon revocation the listing agreement ceased to exist; each and every provision in it became void and of no effect. Con-

sequently, plaintiff could not rely on that part of the agreement which provided for a commission in the event the property was sold by either party within the time prescribed therein.

In view of this holding we do not reach the serious question of whether there was error in admitting certain evidence beyond the issues framed in the pleadings, or other issues presented.

For the reasons stated, the judgment appealed from is reversed and final judgment is entered for defendants.

*Reversed and final judgment.*