## CIRCUIT COURT OF THE CITY OF WINCHESTER

Huntsberry Realty Co., Inc.

v.

Donna F. Morgan

October 8, 1991

Case No. (Law) 87-2

By JUDGE JOHN E. WETSEL, JR.

This case came before the Court for ruling on the plaintiff's Motion in Limine to bar the defendant from offering evidence and argument at the trial of this case to show that, before the plaintiff real estate agent had procured a purchaser for the property, the defendant had revoked her authority to sell given to the plaintiff under a real estate listing agreement and from arguing that plaintiff's damages are limited to the reasonable value of the services rendered up to the time that the authority to sell was revoked. Upon consideration of the memoranda of counsel, the Motion in Limine is denied.

### I. *Findings of Fact*

For the purposes of its ruling, the Court made the following Findings of Fact based upon the admissions contained in the parties' pleadings.

On April 19, 1986, Donna F. Morgan and Richard A. Morgan, husband and wife, entered into a contract with defendant Huntsberry by which the Morgans agreed to list

the Morgans' home in Frederick County, Virginia, for sale. The listing agreement was a printed form, "Blue Ridge Multiple Listing Service Exclusive Authorization to Sell (Revised Form 7/83)" and stated in pertinent part:

> [O]wner hereby grants to realtor the exclusive and irrevocable right to sell such property from 12:00 o'clock noon on April 19, 1986, until midnight on July 19, 1986 . . . . It is understood by owner that the above sum or any other prices subsequently authorized by owner shall include a compensation of 6% of the selling price which shall be payable by owner to realtor upon execution by any purchaser or purchasers of a valid contract of sale of the property during the period of time and whether or not realtor was a procuring cause of any such contract of sale.

The agreement was silent as to the parties' remedies upon default.

At the time in question, the property was owned by the Morgans as tenants by the entireties with right of survivorship.

During the period of the listing agreement and prior to July 17, 1986, the Morgans separated because of marital difficulties, and Mrs. Morgan claims that she notified Huntsberry that she would not sell the house, and she further claims that despite the receipt of that notification, Huntsberry continued to look for purchasers of the property.

On July 17, 1986, Huntsberry obtained a purchaser who offered the listing price for the Morgan property with no contingencies.

Mrs. Morgan refused to accept the purchase contract, and Huntsberry now seeks its commission of $2,790.00, which it maintains is due on the July 17, 1986, contract which it procured.

Mr. Morgan has been nonsuited from this action.

## II. *Conclusions of Law*

The issue of Mrs. Morgan's revocation of agency has come before the Court on a Motion in Limine, so the

rulings made herein are made contingent upon proper proof that the notice of revocation of the exclusive listing was given by Mrs. Morgan to Huntsberry prior to July 16, 1989, and before Huntsberry had procured a purchaser for the property. If that issue is in dispute, then that is a finding of fact which will have to be made either by the Court or the jury at the trial of this case.

The language of the April 19, 1986, listing agreement is clear and unambiguous about the nature of the listing and the undertaking of the broker, so no extrinsic evidence will be admitted to explain the meaning of that language. *Great Falls Hardware v. South Lakes Village Ctr.*, 238 Va. 123, 125, 380 S.E.2d 642 (1989). The contract is silent with respect to the remedy of a party for breach of the contract. "However, the law arms a party with a remedy for a breach of contract by the other party; a cause of action for damages, and at least for nominal damages, arises upon breach of the contract. The obligation to pay damages arising from an unexcused breach or nonperformance of a contract is implied by law." 17A Am. Jur. 2d, *Contracts,* § 724.

The April 19, 1986, listing agreement provides that "in consideration of the services of Huntsberry Realty Co. . . . to be rendered to the . . . 'owner' . . . and of the promise of realtor to make reasonable efforts to obtain a purchaser therefore, owner hereby lists with realtor the real estate and all improvements thereon . . . ." Accordingly, the contract is bilateral as it contains provisions akin to those in the contract in *Morris v. Bragg*, 155 Va. 912, 919, 156 S.E. 381 (1931), where the contract under which the real estate sales commission was claimed contained the words "for the consideration of advertising and making reasonable efforts to sell . . . ."

While a real estate listing agreement like the April 19, 1986, agreement between the parties creates an agency relationship, *Ford v. Gibson*, 191 Va. 96, 59 S.E.2d 867 (1950), the principal maintains the power to revoke the agency at any time unless the agency is coupled with an interest thereby making it legally irrevocable. The mere entitlement to a realtor's commission under a listing agreement upon procuring a sale is not an "agency coupled with an interest" within the meaning of that term in agency

law, so such agreements may be terminated in fact even if the contract says it is irrevocable. *See, George H. Rucker & Co. v. Glennan,* 130 Va. 511, 107 S.E. 725 (1921); and *Hummer v. Engeman,* 206 Va. 102, 107, 141 S.E.2d 716 (1965).

As noted in 3 Am. Jur. 2d, *Agency,* § 46:

> Although a principal may have the power to terminate an agency relationship at will, such termination, if it is a contractual violation, will render the principal liable to the agent in damages. In other words, a contract between a principal and an agent may be such that although the authority to represent the principal may be terminated, the act of termination would be a breach of contract for which the agent is entitled to recover any damage sustained.

In *Spence v. Hospital Corporation,* 202 Va. 478, 483, 116 S.E.2d 114 (1961), where it was claimed that the hospital had entered into a stock subscription agreement which had been breached, the Court discussed the situation presented where a principal had the *power* to revoke an agency agreement, although that revocation was in breach of the agency agreement:

> Where there is a contract between a principal and an agent for the sale of stock, not coupled with an interest, the principal has the *power* to revoke the agency at any time before a sale has been made. This power must not be confused with the *right* to revoke, however, for a party improperly revoking a contract may be liable for its breach. (Citations omitted.)

If the evidence shows that Mrs. Morgan revoked the authority to sell which she had earlier given Huntsberry prior to Huntsberry's procuring the sale on which it seeks a commission, then, while Morgan's revocation of authority was a breach of her contract with Huntsberry and will make her liable for damages, she would not be liable to pay the commission on the sale procured after her notice of the revocation of her authority to sell

was received by Huntsberry. Under the contract in question, the broker would have earned his commission when, while he was still authorized by the Morgans, he produced a purchaser whose offer conformed with the terms of the listing. *See, Kuga v. Chang,* 241 Va. 179 (1991). Therefore, in the instant case, if Mrs. Morgan revoked Huntsberry's authority before the sale was procured, she is only liable to Huntsberry "for the damage caused thereby . . . ." *George H. Rucker & Co. v. Glennan,* 130 Va. 511, 520, 107 S.E. 725 (1921). Assuming that the revocation was received prior to the procurement of the sale, it would appear that this is a case to which the doctrine of *quantum meruit* would appropriately be applied. *See, Heinzman v. Fine, Legum & Fine,* 217 Va. 958, 234 S.E.2d 282 (1977); and *Rucker v. Glennan, supra.*

### III. *Summary*

For the foregoing reasons, the Motion in Limine is denied. If there is a genuine dispute about material facts concerning Mrs. Morgan's revocation of her authority to sell before the sale was procured, the plaintiff may introduce evidence that she revoked her authority to sell given Huntsberry under the real estate listing agreement before Huntsberry procured a purchaser for the property, and then to argue that the plaintiff's damages are limited to the reasonable value of the services rendered up to the time of the wrongful revocation.